# EXHIBIT A

Summonses, Complaint
& Related Documents

Electronically Filed
2/28/2025 2:12 PM
Steven D. Grierson
CLERK OF THE COURT

RAFII & ASSOCIATES, P.C.
1120 N TOWN CENTER DR STE 130
LAS VEGAS, NV 89144
(725) 245-6056



## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| JANE DOE<br>Plaintiff | *Case Number:* A-25-912369-C |
| vs | *Dept:* |
| BERRY GLOBAL, INC., ET AL.<br>Defendant | **PROOF OF SERVICE** |

ERIK KELLIHER, deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age and not a party to nor interested in the proceeding in which this statement is made.

Affiant received a copy of the:
**SUMMONS; COMPLAINT FOR DAMAGES; CIVIL COVER SHEET; INITIAL APPEARANCE FEE DISCLOSURE**

I served the same on **2/19/2025 at 2:21 PM** to:

**Defendant BERRY PLASTICS OPCO, INC., BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT**

by leaving the copies with or in the presence of **KRIS KENNISON, ADMINISTRATIVE ASSISTANT**, at 112 N CURRY ST, CARSON CITY, NV 89703, pursuant to **NRS 14.020**.

Pursuant to NRS 53.045, I declare under penalty of perjury under the law of the State of Nevada that the forgoing is true and correct.

Executed: Thursday, February 20, 2025

ERIK KELLIHER   R-2024-10753
Battle Born Process Service
3710 Grant Drive, Ste. L
Reno, NV 89509
775-507-7188
PILB# 1876

P-2018522.01

Electronically Filed
2/28/2025 2:12 PM
Steven D. Grierson
CLERK OF THE COURT

RAFII & ASSOCIATES, P.C.
1120 N TOWN CENTER DR STE 130
LAS VEGAS, NV 89144
(725) 245-6056



### DISTRICT COURT
### CLARK COUNTY, NEVADA

JANE DOE
  Plaintiff

vs

BERRY GLOBAL, INC., ET AL.
  Defendant

*Case Number:* A-25-912369-C

*Dept:*

**PROOF OF SERVICE**

ERIK KELLIHER, deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age and not a party to nor interested in the proceeding in which this statement is made.

Affiant received a copy of the:
**SUMMONS; COMPLAINT FOR DAMAGES; CIVIL COVER SHEET; INITIAL APPEARANCE FEE DISCLOSURE**

I served the same on **2/19/2025 at 2:21 PM** to:

**Defendant BERRY GLOBAL, INC., BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT**

by leaving the copies with or in the presence of **KRIS KENNISON, ADMINISTRATIVE ASSISTANT**, at 112 N CURRY ST, CARSON CITY, NV 89703, pursuant to **NRS 14.020**.

Pursuant to NRS 53.045, I declare under penalty of perjury under the law of the State of Nevada that the forgoing is true and correct.

Executed: Thursday, February 20, 2025

ERIK KELLIHER    R-2024-10753
Battle Born Process Service
3710 Grant Drive, Ste. L
Reno, NV 89509
775-507-7188
PILB# 1876

P-2018523.01

Electronically Issued
2/10/2025 5:23 PM

**SUMM**
Rachel Mariner, NV Bar No. 16728
Jason Kuller, NV Bar No. 12244
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056
Facsimile: 725.220.1802
rachel@rafiilaw.com
jason@rafiilaw.com
*Attorneys for Plaintiffs*

CASE NO: A-25-912369-C
Department 31

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

JANE DOE,

        Plaintiff,

    v.

BERRY GLOBAL, INC., and BERRY
PLASTICS OPCO, INC., and DOES 1
through 50, inclusive,

        Defendants.

Case No.:
Dept. No.:

**SUMMONS**

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU FILE A RESPONSE WITH THE
COURT WITHIN 21 DAYS.  READ THE INFORMATION BELOW CAREFULLY.**

To the Defendant named above: **BERRY PLASTICS OPCO, INC.**

    A civil complaint has been filed by the Plaintiff against you.  Plaintiff is seeking to recover

the relief requested in the complaint, which could include a money judgment against you or some

other form of relief.

    If you intend to defend this lawsuit, within 21 calendar days [1] after this Summons is served on

you (not counting the day of service), you must:

    1.    File with the Clerk of the Court, whose address is shown below, a formal written

---

[1] The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members, and legislators
each have 45 days after service of this Summons within which to file a response to Plaintiff's complaint.

1

**SUMMONS**
Case Number: A-25-912369-C

0004

1 response (typically a legal document called an "answer," but potentially some other

2 response) to Plaintiff's complaint.

3     2.    Pay the required filing fee to the court, or file an Application to Proceed *In Forma*

4 *Pauperis* and request a waiver of the filing fee

5     3.    Serve (by mail or hand delivery) a copy of your response upon the Plaintiff whose

6 name and address is shown below.

7 **Information and forms to assist you are available, free of charge, at the Civil Law
Self-Help Center at the Regional Justice Center, 200 Lewis Avenue, Las Vegas,**

8 **Nevada, and on the center's website at www.civillawselfhelpcenter.org.**

9     If you fail to respond, the Plaintiff can request your default. The court can then enter judgment

10 against you for the relief demanded by the Plaintiff in the complaint, which could result in money or

11 property being taken from you or some other relief requested in Plaintiff's complaint.

12     If you intend to seek an attorney's advice, do it quickly so that your response can be filed on

13 time.

14                     STEVEN D. GRIERSON

                    **CLERK OF THE COURT**

15

16                                                   2/15/2025

17 By: _____          Date:

            Deputy Clerk  **Klinea Matthews**

18             Regional Justice Center

            200 Lewis Avenue

19             Las Vegas, Nevada 89155

20 DATED: February 10, 2025           Issued at the request of:

21                       **RAFII & ASSOCIATES, P.C.**

22                By:   */s/ Rachel Mariner*

23                      RACHEL MARINER

                     *Attorneys for Plaintiff*

24

25

26

27

28

                              2

                        **SUMMONS**

*RAFII & ASSOCIATES, P.C.*
*EXCELLENCE | COMMITMENT | RESULTS*

Electronically Issued
2/10/2025 5:23 PM

1  **SUMM**
   Rachel Mariner, NV Bar No. 16728
2  Jason Kuller, NV Bar No. 12244
   **RAFII & ASSOCIATES, P.C.**
3  1120 N. Town Center Dr., Ste. 130
   Las Vegas, Nevada 89144
4  Telephone: 725.245.6056
   Facsimile: 725.220.1802
5  rachel@rafiilaw.com
   jason@rafiilaw.com
6  *Attorneys for Plaintiffs*

CASE NO: A-25-912369-C
Department 31

7                    **EIGHTH JUDICIAL DISTRICT COURT**

8                        **CLARK COUNTY, NEVADA**

9  JANE DOE,                          Case No.:
                                      Dept. No.:
10              Plaintiff,
11      v.
12
   BERRY GLOBAL, INC., and BERRY
13 PLASTICS OPCO, INC., and DOES 1
   through 50, inclusive,
14
              Defendants.
15

16                            **SUMMONS**

17  **NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU
    WITHOUT YOUR BEING HEARD UNLESS YOU FILE A RESPONSE WITH THE
18  COURT WITHIN 21 DAYS.  READ THE INFORMATION BELOW CAREFULLY.**

19  To the Defendant named above: **BERRY GLOBAL, INC.**

20      A civil complaint has been filed by the Plaintiff against you.  Plaintiff is seeking to recover

21  the relief requested in the complaint, which could include a money judgment against you or some

22  other form of relief.

23      If you intend to defend this lawsuit, within 21 calendar days [1] after this Summons is served on

24  you (not counting the day of service), you must:

25      1.    File with the Clerk of the Court, whose address is shown below, a formal written

26

27  _____
    [1] The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members, and legislators
28  each have 45 days after service of this Summons within which to file a response to Plaintiff's complaint.

                                         1



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1  response (typically a legal document called an "answer," but potentially some other

2  response) to Plaintiff's complaint.

3  2.    Pay the required filing fee to the court, or file an Application to Proceed *In Forma*

4  *Pauperis* and request a waiver of the filing fee

5  3.    Serve (by mail or hand delivery) a copy of your response upon the Plaintiff whose

6  name and address is shown below.

---

**Information and forms to assist you are available, free of charge, at the Civil Law Self-Help Center at the Regional Justice Center, 200 Lewis Avenue, Las Vegas, Nevada, and on the center's website at www.civillawselfhelpcenter.org.**

---

9    If you fail to respond, the Plaintiff can request your default. The court can then enter judgment

10 against you for the relief demanded by the Plaintiff in the complaint, which could result in money or

11 property being taken from you or some other relief requested in Plaintiff's complaint.

12    If you intend to seek an attorney's advice, do it quickly so that your response can be filed on

13 time.

STEVEN D. GRIERSON

**CLERK OF THE COURT**

2/15/2025

By: _____          Date:

Deputy Clerk **Klinea Matthews**
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada 89155

DATED: February 10, 2025                    Issued at the request of:

**RAFII & ASSOCIATES, P.C.**

By:    */s/ Rachel Mariner*
RACHEL MARINER
*Attorneys for Plaintiff*

2

**SUMMONS**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Electronically Filed
2/10/2025 5:23 PM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
Rachel Mariner, NV Bar No. 16728
Jason Kuller, NV Bar No. 12244
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056
Facsimile: 725.220.1802
Email: rachel@rafiilaw.com
Email: jason@rafiilaw.com
*Attorneys for Plaintiff*

CASE NO: A-25-912369-C
Department 31

# EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

JANE DOE,

        Plaintiff,

  v.

BERRY GLOBAL, INC., and BERRY PLASTICS OPCO, INC., and DOES 1 through 50, inclusive,

        Defendants.

Case No.:
Dept. No.:

## COMPLAINT FOR DAMAGES

1. Sexual Harassment Discrimination (NRS 613.330(1));

2. Retaliation (NRS 613.340);

3. Constructive Discharge;

4. Negligent Infliction of Emotional Distress;

5. Intentional Infliction of Emotional Distress;

6. Negligent Hiring and Training;

7. Grossly Negligent Supervision;

8. Hostile Work Environment;

9. Assault and Battery;

10. Workplace Defamation Per Se;

11. Sex Discrimination (42 U.S.C. 20003 *et. seq.*)

12. Retaliation (42 U.S.C. 2000e *et seq.*)

**JURY TRIAL DEMANDED**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1

0008



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Plaintiff JANE DOE ("Plaintiff") alleges as follows:

1.     All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge.

2.     Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

### PARTIES

3.     At all relevant times, Plaintiff JANE DOE was a natural person over the age of 18 residing in Nevada. Plaintiff currently resides in Clark County, Nevada.

4.     At all relevant times, Defendant BERRY GLOBAL, INC. ("Berry Global") was a foreign corporation registered and licensed to do business under Nevada law (NV20071658720).

5.     At all relevant times, Defendant BERRY PLASTICS OPCO, INC. ("Berry Plastics") was a foreign corporation registered and licensed to do business under Nevada law (NV20101844335).

6.     Berry Global and Berry Plastics have three facilities in Nevada in which they make packaging.

7.     The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and this Complaint will be amended at such a time when Plaintiff learns of their identities. Each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein.

8.     Any reference in this complaint to Defendant, Defendants, Doe Defendants, Berry Global, Inc., Berry Plastics OPCO, Inc., Berry and Does 1-50 shall mean "Defendants and each of them."

### ALTER EGOS, AGENCY, CONSPIRACY

9.     Defendants are jointly and severally liable for all injuries and damages alleged herein.

10.     To the extent Defendants are or were business entities separate from each other, there exists such a unity of interest and commonality of control, including commingling of funds, lack of adequate capitalization, failure to maintain proper books and records, and additional omissions, that there truly is no separation or distinction among Defendants. Defendants' business entities are and were mere instrumentalities, shells, and alter egos of other Defendants such that adherence to the

2

**COMPLAINT**

1  fiction of a separate business entity should be ignored and the entities treated as though they were one
2  and the same.

3      11.    At all relevant times, each Defendant was an agent, employee, joint-venturer,
4  shareholder, director, member, co-conspirator, alter ego, master, or partner of other Defendants, and
5  at all times mentioned herein were acting within the scope and course and in pursuance of his, her,
6  their, or its agency, joint venture, partnership, employment, common enterprise, or actual or apparent
7  authority in concert with each other and the other Defendants.

8      12.    At all relevant times, the acts and omissions of Defendants concurred and contributed
9  to the various acts and omissions of each and every one of the other Defendants in proximately causing
10 the complaints, injuries, and damages alleged herein.  At all relevant times, Defendants approved of,
11 condoned, or otherwise ratified each and every one of the acts or omissions complained of herein.  At
12 all relevant times, Defendants aided and abetted the acts and omissions of each and every one of the
13 other Defendants thereby proximately causing the damages alleged herein.

14                              **JURISDICTION AND VENUE**

15     13.    This Court has original jurisdiction over the claims alleged herein because the amount
16 in controversy exceeds $15,000.

17     14.    Plaintiff exhausted her administrative remedies with the Nevada Equal Rights
18 Commission ("NERC") and Equal Employment Opportunity Commission ("EEOC") on November
19 12, 2024.

20     15.    This Court also has jurisdiction over Plaintiff's Title VII Federal claims because State
21 Courts possess plenary jurisdiction and exercise concurrent jurisdiction with Federal Courts over
22 Federal claims. Venue is proper in this Court because Plaintiff resides in Clark County and each
23 named Defendant resides, conducts business, or otherwise is found in this judicial district.

24                              **FACTUAL ALLEGATIONS**

25     16.    Plaintiff incorporates and realleges all paragraphs above.

26     17.    Ms. Doe began working for Berry on or about July 17, 2020 as a Line Inspector ("Line
27 Inspector") in the Molding Department of Defendant's production facility located at 800 E. Horizon
28 Dr., Henderson, NV 89105 (the "Facility").

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

0010

18.    In or about October 2020, Ms. Doe became friends with Wallace Ryan, a Mold Tech who worked at the Facility (Ryan would later tell Ms. Doe he had been silently "watching" her for several months before that).

19.    In or about December 2020, they began talking more frequently outside of work, and by February 2021 they were dating.

20.    From early on, Ms. Doe was aware Ryan had personal connections at the Facility (where he had worked for almost ten years by the time the events in question occurred).

21.    He told her that he had previously dated the daughter of Lori Black, an Inventory Analyst who had worked for Defendant for approximately 35 years.

22.    Black's current son-in-law, Bryce, was also a Group Lead at the Facility while Ms. Doe worked there, and Ryan maintained personal friendships with both of them. Ryan also served as Ms. Doe's supervisor on a regular basis when her Group Lead was gone.

23.    Within a year of their relationship beginning, Ryan's true colors as a violent, manipulative abuser had begun to show.

24.    He was manipulative, extremely jealous, and did not try to hide the fact he easily became violent (in fact, he bragged about it).

25.    He abused Ms. Doe emotionally, mentally, and physically.

26.    In January 2023, Ryan was arrested and charged with DUI Resulting In Death and Reckless Driving counts after hitting and killing a cyclist several months earlier contributing to Ms. Doe's decision to leave him for good.

27.    On or about March 1, 2023, Ms. Doe broke up with Ryan, this beginning six months of unrelenting torment and unabated harassment, much of which took place at the Facility even after Ms. Doe begged Defendant's HR Manager, Jennifer Dartt (HR Manager Dartt) for protection.

28.    Ryan's actions over the first few weeks after their breakup quickly indicated to Ms. Doe she needed to report him to HR for her own safety at work and ability to do her job.

29.    When she reported the extensive harassment (including, at that point, posts on Facebook depicting violent sexual assault directed at her and relentless offensive tagging on and near her workstation) to Defendant's HR Manager, Jennifer Dartt ("Dartt" or "HR Manager Dartt"), Dartt

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



1 | told her there was nothing she could do about Ryan's past harassment up to this point because Ms.
2 | Doe had not reported it to her right after it occurred.

3 |      30.     Her only solution was to transfer Ms. Doe to a different department to separate them.

4 |      31.     Ms. Doe did not want to transfer but reluctantly accepted, seeing no other option
5 | (because she was not presented with one).

6 |      32.     She began training under supervisors in another department, but waited several weeks
7 | for HR Manager Dartt to approve and make the transfer.

8 |      33.     In the meantime, Ryan continued to harass Ms. Doe consequence-free.

9 |      34.     Ms. Doe reached out to HR Manager Dartt again on or about April 5, 2023 and asked
10 | if she could be transferred to the Warehouse in the Facility, rather than the Printing Department (the
11 | position HR Manager Dartt told her was most likely, and one Ms. Doe especially did not want).

12 |      35.     Dartt told Ms. Doe that was not possible and transferred her to the Printing Department
13 | a few days later, on or about April 7, 2023.

14 |      36.     Meanwhile, Ryan's harassment of Ms. Doe began to escalate at the beginning of April,
15 | but in ways that were intentionally only visible to him.

16 |      37.     The tagging and secret notes allowed Ryan to get away with making his omnipresence
17 | around Ms. Doe known, even when she could not see him (or prove it to others).

18 |      38.     He strived to have Ms. Doe feel as though she could not escape his watch.

19 |      39.     But the longer time went on and his usual abuse tactics did not return her to him as
20 | they had in the past, the more aggressive and desperate Ryan had become.

21 |      40.     He had been making full-blown threats to physically harm Ms. Doe and any "new
22 | man" she had regularly for over a month by April 14 when Ms. Doe told a friend (whom she called
23 | to pick her up from work because she was afraid Ryan was waiting for her outside).

24 |      41.     She was leaving work early because she did not know if he was just being childish or
25 | if he would really kill her.

26 |      42.     Emboldened by the impunity given to him by Berry to continue harassing Ms. Doe so
27 | far, Ryan began physically harming her in the Facility—pushing barrels into her, raising his fists at
28 | her, and even attacking her while at work in areas visible to security cameras.

5

**COMPLAINT**

43.    On or about April 20, 2023, after Ms. Doe reported that Ryan had physically assaulted her at work and asked HR Manager Dartt to check the security footage, Dartt said the bad quality of the footage gave her "reason to doubt" Ms. Doe's claims and, in any event, she had already talked to Ryan and nothing of that kind should happen again.

44.    HR Manager Dartt stated Ms. Doe could rest easy— "tomorrow [was] a new day!".

45.    Ms. Doe realized later that Lori Black (Ryan's ex-girlfriend's mother and personal friend who had worked at the Facility for approximately 30 years) had spoken with HR on Ryan's behalf and had to leave work early because she had a panic attack.

46.    Ms. Doe believes that Ms. Black's intervention was part of the reason that, even though she was regularly asking HR Manager Dartt to do more to make her safe at work, Ryan continued to go undisciplined.

47.    Ms. Doe's transfer to a different department in the Facility only seemed to agitate Ryan, and he made it a point to leave his area and stalk around hers whenever possible.

48.    He did not approach Ms. Doe, but loitered in her space, glared at her, and made sure he was around whenever she was arriving and leaving through the end of April and into May 2023.

49.    He also continued to tag her belongings and around her workstation on a regular (if not increasingly frequent) basis.

50.    Ms. Doe continued to report the harassment to HR Manager Dartt and beg for help with increasing urgency, both in person and via email.

51.    Dartt responded by telling Ms. Doe that Defendant had several plants in Indiana if she did end up having to move back there to get away from Ryan.

52.    She also reminded Ms. Doe there was a night shift position posted online she could apply for.

53.    Ryan assaulted and battered and verbally harassed Ms. Doe at work on or about May 2, 2023.

54.    She reported the incident to HR Manager Dartt, but in light of Defendant's lack of efficacy and confidentiality in protecting her so far, Ms. Doe specifically asked Dartt not to do anything that would cause Ryan to retaliate against her.

6

**COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

55.     A few days later, Ms. Doe's stomach dropped when she saw someone had written "stop… gossiping [and] … telling people your problems, keep it at home!" on the anonymous suggestion board in the Facility.

56.     She was terrified Ryan had found out she was complaining about him since Berry was not going to take any action to protect her.

57.     Unfortunately, the situation with Ms. Doe and Ryan boiled over (to the extent that was possible after everything that had already transpired) in the first few weeks of May 2023. Ryan's stalking had risen to a level that was unbearable and he was threatening her constantly.

58.     At some point, Ryan had posted a fake, sexually explicit Craigslist ad and Instagram account with Ms. Doe's contact information, including her home address, that generated a slew of unwelcome, sexually explicit messages and calls that she did not know how to stop.

59.     Ms. Doe moved her four-year-old daughter to Utah to live with her grandparents and planned on moving in with her downstairs neighbor around this time because they were not safe in their home.

60.     On or about May 8, 2023, Ms. Doe asked HR Manager Dartt if she could switch to night shift.

61.     Ryan became under the impression Ms. Doe was in a relationship with her neighbor and had consequently upped the intensity of his beratement and need to loom over her at work.

62.     After spending an entire day at work spreading rumors that she was on drugs to their coworkers and following her wherever she went, Ryan showed up at Ms. Doe's house, demanding answers about her relationship with her neighbor.

63.     While they were arguing in his car (Ms. Doe did not want him in her home), Ryan strangled Ms. Doe until she lost consciousness before she was able to escape.

64.     She immediately filed a police report that eventually led to Domestic Battery Strangulation and Disorderly Conduct charges to which Ryan pled guilty.

65.     Ms. Doe also obtained a Temporary Protection Order (TPO) against Ryan on or about May 11, 2023.

66.     Due to HR Manager Dartt's lack of concern so far, Ms. Doe's plan to protect herself

7

**COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

0014

1  at work was to confirm she would be on night shifts – completely away from Ryan – before she served

2  the TPO on him.

3      67.    She refrained from mentioning it when asking about her schedule the next day.

4      68.    In addition to serving her own TPO on him, Ms. Doe was also petrified Ryan would

5  find out she had been cooperating with police and the DA regarding Ryan's DUI-Resulting-In-Death

6  case, which served as the backdrop to the nightmare she was stuck in at work.

7      69.    Over the course of the next week while she was waiting to be switched to nights, Ms.

8  Doe continued to go to work and endure Ryan's harassment and stalking.

9      70.    For his part, Ryan's physical presence wherever he could find Ms. Doe at the Facility

10  and tagging continued.

11      71.    When HR Manager Dartt slow-rolled Ms. Doe's request to switch schedules (just like

12  she had with her transfer), Ms. Doe divulged she had filed a TPO against Ryan, on or about May 17,

13  2023.

14      72.    Again, she begged HR Manager Dartt to keep this information private for her safety.

15      73.    When Ryan did find out (the next day, on or about May 18, 2023), Ms. Doe' sent

16  emails to HR Manager Dartt and Joshua Trails at Las Vegas Metro Police Department, who she had

17  been in contact with about the May 9 assault, requesting police presence at the next shift change.

18      74.    Dartt replied and volunteered that she would personally be present at shift change to

19  assist Ms. Doe.

20      75.    Being present with Ms. Doe during the shift change, when Ryan would otherwise stay

21  behind to stalk Ms. Doe, was all HR Manager Dartt deemed necessary for the next several weeks,

22  despite Ms. Doe's repeated reports of harassment and requests for more to be done.

23      76.    Ryan continued to work his usual shifts and shifted his focus to turning other

24  coworkers against Ms. Doe by garnering sympathy as a wrongfully-accused victim.

25      77.    After several detailed complaints by Ms. Doe at the end of May, HR Manager Dartt's

26  next solution was to strongly encourage Ms. Doe to talk to her doctor about FMLA leave to "protect

27  her attendance".

28      78.    Ryan violated the TPO several more times into the beginning of June 2023 (both

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



8

**COMPLAINT**



1   physically at work and by continuing to send Ms. Doe threatening and abusive messages on platforms

2   where he was not blocked).

3        79.    Ms. Doe continued to report the harassment to HR Manager Dartt with increasing

4   detail.

5        80.    She continued to see no change, and in fact, Ryan had so successfully turned her

6   coworkers against her that she told Dartt, "People I used to be close to won't even look at me".

7        81.    On or about June 10, 2023, Ms. Doe hit her breaking point and sent HR Manager Dartt

8   a series of emails informing her she was taking a medical leave of absence.

9        82.    Dartt's unwillingness to protect Ms. Doe, *even when faced with a mounting pile of*

10  *evidence that Ryan was relentlessly and violently abusing her*, was a large part of the reason she told

11  Dartt her leave was necessary.

12       83.    She described her myriad of medical issues caused and/or exacerbated by Ryan's abuse

13  and Defendant's unwillingness to do anything about it, including PTSD, anxiety, depression, and

14  stomach ulcers.

15       84.    On or about July 17, 2023, Ms. Doe returned from her leave of absence. She was still

16  set to work night shifts to avoid Ryan completely, which quickly proved to be just as low of a priority

17  for HR Manager Dartt and Defendants as when she left.

18       85.    By August 6, Ms. Doe quit her job after she continued to report Ryan's relentless

19  stalking and tagging, this time near her home, and Ryan continued to wait for her after her shifts in

20  order to pick up right where he left off.

21       86.    Upon returning to work, Ms. Doe's anxiety and related ulcer issues flared up almost

22  immediately, and she was no longer willing to put her health (and life) at risk because Defendants

23  sided with Ryan over her, every time.

24       87.    Ms. Doe was forced out of her employment by Berry's utter unwillingness to

25  adequately address a known abuser's workplace abuse.

26  ///

27  ///

28  ///



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

0016

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



### FIRST CAUSE OF ACTION
#### Sex Discrimination NRS 613.330(1)

88.     Plaintiff incorporates and realleges all paragraphs above.

89.     Nevada law prohibits discrimination against an employee based on her sex. Specifically, "it is an unlawful employment practice for an employer: (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her . . . sex . . . or (b) To limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of his or her . . . sex." NRS 613.330(1).

90.     Here, Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions, and privileges of her employment because of her sex. Plaintiff was subject to different terms and conditions of employment than her male counterparts when, among other things, her requests to be separated from her abuser were "slow-rolled", she had to work the night shift and when she was not protected from assault and battery at work.

91.     Defendants also discriminated against Plaintiff by constructively terminating her because of Ryan's misconduct. Defendants thereby ratified, condoned, and failed to take any corrective action against the harassing and discriminatory conduct directed toward Plaintiff.

92.     Defendants acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

93.     As a result of Defendants' wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

### SECOND CAUSE OF ACTION

#### Retaliation – NRS 613.340

94.     Plaintiff realleges and incorporates all paragraphs above of this Complaint as though fully set forth herein.

10

**COMPLAINT**

95.    Nevada's EEO Laws likewise prohibit employers from retaliating against an employee because that individual has engaged in protected activity regarding a discriminatory employment practice made unlawful under state statutes. NRS 613.340.

96.    Here, Plaintiff was retaliated against when Defendants did not separate her from her abuser, when they did "slow-rolled" changes to her employment negative to Plaintiff but necessary for her safety and when they constructively discharged her. Defendants' actions and engagement against Plaintiff's safety and interest were a direct result causing Plaintiff to believe that she had no recourse but to resign.

97.    Defendants acted intentionally, with malice, fraud, or oppression, in retaliating against Plaintiffs and their protected activities.

98.    As a result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer loss of earnings and benefits, damage to her reputation and career, and severe anguish and emotional distress and connected physical illness.

99.    Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and interest.

## THIRD CAUSE OF ACTION

### Constructive Discharge

100.    Plaintiff realleges and incorporates Paragraph 1 through 38, inclusive, of this Complaint as though fully set forth herein.

101.    Under Nevada law, "a tortious constructive discharge is shown to exist upon proof that: (1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." *Martin v. Sears, Roebuck and Co.*, 111 Nev. 923, 926 (1995).

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

11

**COMPLAINT**

0018

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

102.   Defendants' actions, as alleged above, were contrary to substantial and fundamental public policies in favor of a workplace free from racial and sexual discrimination and harassment, as well as retaliation.

103.   Here, Defendants' harassment, and retaliation against Plaintiff created intolerable work conditions that Berry knew or should have known would force the resignation of Plaintiff or any other reasonable person in her position.

104.   Defendants could have remedied the unlawful workplace environment but chose not to.

105.   By engaging in the conduct described above, Defendants caused the constructive discharge of Plaintiff in violation of public policy.

106.   Defendants acted intentionally, with malice, fraud, or oppression.

107.   As a result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer loss of earnings and benefits, damage to her reputation and career, and severe anguish and emotional distress and significant illness.

108.   Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and interest.

## FOURTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

109.   Plaintiffs incorporate and reallege all paragraphs above.

110.   As Plaintiffs' employer, Berry owed a duty of care to each Plaintiff. At the very least, this duty included not violating Nevada state law and public policy – i.e., not discriminating against Plaintiff based on her sex, not ratifying, and condoning their harassment, not retaliating against them, and not causing their constructive discharge.

111.   By engaging in the conduct alleged above, Defendants breached the duty of care it owed to Plaintiff.

112.   As a result of Defendants' wrongful actions, Plaintiff has suffered and continues to suffer severe anguish and emotional distress that has manifested itself in various physical symptoms,

12

**COMPLAINT**

1  including depression and anxiety and an ulcer which risk or have become chronic conditions.

2      113.    Plaintiff seeks all damages and remedies available to her under law including, but not

3  limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and

4  interest.

5                              **FIFTH CAUSE OF ACTION**

6                         **Intentional Infliction of Emotional Distress**

7      114.    Plaintiffs incorporate and reallege all paragraphs above.

8      115.    Defendant's conduct, as alleged above, was extreme and outrageous, and Berry either

9  intended to cause Plaintiffs severe emotional distress or acted with reckless disregard for the likely

10  consequences of its conduct.

11     116.    Defendant's conduct in this case not only violated Plaintiff's rights but also

12  jeopardized her well-being, mental stability, and peace of mind.  Defendant acted intentionally, with

13  malice, fraud, or oppression.

14     117.    As a result of Defendant's wrongful actions, Plaintiff has suffered and continues to

15  suffer severe anguish and emotional distress that has manifested itself in various physical symptoms,

16  including depression, anxiety, an ulcer which risk or have become chronic conditions.

17     118.    Plaintiff seeks all damages and remedies available to her under law including, but not

18  limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and

19  interest.

20                              **SIXTH CAUSE OF ACTION**

21                          **Negligent Hiring and Training**

22     119.    Plaintiff incorporate and reallege all paragraphs above.

23     120.    Under Nevada law, Defendants had a duty to exercise reasonable care in the hiring,

24  training, supervision, and retention of its employees and managers.

25     121.    Here, Defendants breached that duty by failing to take any action to deter the tortious

26  and unlawful conduct described above, which breach directly and proximately caused damage to each

27  Plaintiff.

28     122.    As a result of Defendant's wrongful actions, Plaintiff has suffered and continues to

                                              13
                                         **COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

0020

1  suffer loss of earnings and benefits, damage to her reputation, career, health, and severe anguish and

2  emotional distress.

3      123.    Plaintiff seeks all damages and remedies available to them under law including, but

4  not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs,

5  and interest.

6  **SEVENTH CAUSE OF ACTION**

7  **Grossly Negligent Supervision**

8      124.    Plaintiff incorporates and realleges all paragraphs above.

9      125.    Defendants' actions, as alleged above, are contrary to substantial and fundamental

10  public policies delineated in both state and federal laws, including but not limited to NRS 613.310-

11  613.4383 (Nevada's equal employment opportunity laws), Title VII of the Civil Rights Act. These

12  state and federal laws articulate substantial and fundamental public policies in favor of a workplace

13  environment free from discrimination, harassment, and retaliation based on sex, to report

14  discrimination and harassment, to reject the sexual advances of coworkers and managers.

15      126.    Defendants had a duty to exercise reasonable care in the hiring, training, supervision,

16  and retention of its employees and managers.

17      127.    Defendants' supervision of Ryan failed to exercise even a slight degree of care and

18  acted in indifference to its legal duties respecting the rights of Plaintiff.

19      128.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant general

20  and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her

21  under law including, but not necessarily limited to, compensatory, consequential, and punitive

22  damages, attorneys' fees, costs, and interest.

23

24  **EIGHTH CAUSE OF ACTION**

25  **Hostile Work Environment**

26      129.    Plaintiff incorporates and realleges all paragraphs above.

27      130.    Defendants, by their actions alleged above, subjected Plaintiff to a hostile work

28

14

**COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1   environment.

2   131.    During her employment, Defendants repeatedly failed in their duty of care and

3   subjected Plaintiff to stalking, assault, battery, libel and injury based on her sex.

4   132.    These statements and conduct were sufficiently severe or pervasive to alter the

5   conditions of employment by creating an intimidating and hostile workplace environment.

6   Furthermore, Defendants, failed to prevent or remedy the conditions constituting the hostile work

7   environment that Plaintiff was subjected to during her employment.

8   133.    This hostile work environment included, without limitation, forcing Plaintiff to face

9   her criminal abuser repeatedly in the workplace.

10  134.    The hostile work environment included, without limitation, the assault of Plaintiff

11  on multiple occasions at work.

12  135.    The hostile work environment included defamation per se.

13  136.    Defendants acted intentionally, with malice, fraud, or oppression, in discriminating

14  against Plaintiff because of her sex.

15  137.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant

16  general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available

17  to her under law including, but not necessarily limited to, compensatory, consequential, and punitive

18  damages, attorneys' fees, costs, and interest.

19  **NINTH CAUSE OF ACTION**

20  **Assault and Battery**

21  138.    Plaintiff realleges and incorporates all paragraphs above.

22  139.    By their actions mentioned above, Defendants intended to cause harmful or offensive

23  contact to Plaintiff, and such contact did occur.

24  140.    By their actions mentioned above, Defendants intended to cause apprehension of harm

25  and fear in Plaintiff, and such apprehension and harm did occur.

26  141.    Defendants acted intentionally, with malice, fraud, or oppression.

27  142.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant general

28  and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

15

**COMPLAINT**

1  under law including, but not necessarily limited to, compensatory, consequential, and punitive

2  damages, attorneys' fees, costs, and interest.

3  **TENTH CAUSE OF ACTION**

4  **Workplace Defamation Per Se**

5      143.  Plaintiff realleges and incorporates all paragraphs above.

6      144.  In the scope of their employment, various of Defendants' employees made false and

7  defamatory unprivileged statements concerning Plaintiff to other employees and to HR.

8      145.  Defendants knew or should have known that such statements were false.

9      146.  The defamatory statements caused damage to Plaintiff's relationships, physical safety,

10  health and ultimately allowed assaults and batteries of Plaintiff at her workplace.

11      147.  Defendants acted intentionally, with malice, fraud or oppression.

12      148.  As a result of Defendants' wrongful actions, Plaintiff has sustained significant general

13  and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her

14  under law including, but not necessarily limited to, compensatory, consequential, and punitive

15  damages, attorneys' fees, costs, and interest.

16  **ELEVENTH CAUSE OF ACTION**

17  **Sex Discrimination in Violation of 42 U.S.C. 20003 *et. seq.***

18      149.  Plaintiff incorporates and realleges all paragraphs above.

19      150.  Title VII states, in relevant part, that "[i]t shall be an unlawful employment practice

20  for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to

21  discriminate against any individual with respect to his compensation, terms, conditions, or privileges

22  of employment, because of such individual's... sex... (2) to limit, segregate, or classify his

23  employees or applicants for employment in any way which would deprive or tend to deprive any

24  individual of employment opportunities or otherwise adversely affect his status as an employee,

25  because of such individual's... sex...." 42 U.S.C. sec. 2000e-2 (alteration and emphasis added).

26      151.  Notwithstanding Title VII, Defendant subjected Plaintiff to inferior terms and

27  conditions of employment vis-a-vis her male counterparts.

28      152.  Because Defendants did not protect Plaintiff from work-place harassment and "slow-

_____
16
**COMPLAINT**



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

0023

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1  rolled" her requests to transfer departments and move to night shift, they discriminated against Ms.

2  Doe based on sex.

3      153.    Defendants acted intentionally, with malice, fraud, or oppression, in retaliating against

4  Plaintiffs and their protected activities.

5      154.    Based on the lack of any legitimate business reason for disciplining and terminating

6  Plaintiff, compounded by Defendant's more favorable treatment of Plaintiff's white male

7  counterparts, Defendant's unfair treatment of Plaintiff must partially or primarily be based on her sex.

8      155.    Defendants acted intentionally, with malice, fraud or oppression.

9      156.    As a result of Defendant's wrongful discrimination, Plaintiff has sustained significant

10  general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available

11  under law including, but not limited to, compensatory, consequential, and punitive damages, as well

12  as attorneys' fees, costs, and interest.

13                **TWELFTH CAUSE OF ACTION**

14               **Retaliation [42 U.S.C. 2000e et seq.]**

15      157.    Plaintiff incorporates and realleges all paragraphs above.

16      158.    Title VII prohibits employers from retaliating against employee "because [that

17  employee] has opposed ... an unlawful employment practice ... or ... made a [Title VII] charge." 42

18  U.S.C. § 2000e-3(a)

19      159.    Engaging in protected activities encompasses not only formal filing of complaints, but

20  also includes opposition to practices deemed prohibited by Title VII. The expansive interpretation

21  given to Title VII dictates that any act of opposition to forbidden practices is protected, even if the

22  original grievance isn't proven, provided the opposition was made in good faith belief of wrongdoing.

23      160.    Here, Plaintiff was retaliated against when Defendants did not separate her from her

24  abuser, when they did "slow-rolled" changes to her employment and when they constructively

25  discharged her. Defendants' actions and engagement against Plaintiff's safety and interest were a

26  direct result causing Plaintiff to believe that she had no recourse but to resign.

27      161.    Based on the lack of any legitimate business reason for failing to provide a safe

28  workplace, compounded by Defendants' seeming support of Plaintiffs' abuser, Defendant's

1  retaliatory motive is clear.

2  162.  Defendants acted intentionally, with malice, fraud or oppression.

3  163.  As a result of Defendant's illegal retaliation, Plaintiff has sustained significant general

4  and special damages to be proven at trial. Plaintiff seeks all damages and remedies available under

5  law including, but not limited to, compensatory, consequential, and punitive damages, as well as

6  attorneys' fees, costs, and interest.

7  **PRAYER FOR RELIEF**

8  WHEREFORE Plaintiff prays for relief as follows:

9  1.  For compensatory damages, including front pay, back pay, lost wages and benefits,

10  out-of-pocket costs and expenses, emotional distress damages, punitive damages, as well as other

11  special and general damages, according to proof;

12  2.  For reasonable attorneys' fees authorized by statute, common law, or equity;

13  3.  For costs of suite incurred herein;

14  4.  For pre-judgment and post-judgment interest at the maximum legal rate;

15  5.  For exemption from arbitration pursuant to Nevada Arbitration Rules 3 and 5; and

16  6.  For such other and further relief as the Court may deem just and proper.

17

18  DATED: February 10, 2025          Respectfully submitted,

19                                     **RAFII & ASSOCIATES, P.C.**

20

21              By: ___*/s/ Rachel Mariner*___
                        RACHEL MARINER

22                      *Attorneys for Plaintiff*

23

24

25

26

27

28

18

**COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

# DISTRICT COURT CIVIL COVER SHEET

............................................ County, Nevada

Case No. ............................
*(Assigned by Clerk's Office)*

**CASE NO: A-25-912369-C**
~~Department~~ 31

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| JANE DOE | BERRY GLOBAL, INC., BERRY PLASTICS OPCO, INC., |
| c/o Rachel Mariner, Esq. and Jason Kuller, Esq. | and DOES 1 through 50, inclusive |
| 1120 N. Town Center Dr., Suite 130, Las Vegas, NV 89144 | |
| Phone: (725) 245-6056 | |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Rachel Mariner, Esq. (SBN 16728) \| Jason Kuller, Esq. (SBN 12244) | |
| RAFII & ASSOCIATES, P.C. | |
| 1120 N. Town Center Dr., Suite 130, Las Vegas, NV 89144 | |
| Phone: (725) 245-6056 \| Facsimile (725) 220-1802 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

### Civil Case Filing Types

| Real Property | Negligence | Torts |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☑ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

| 02/10/2025 | /s/ Rachel Mariner |
|---|---|
| Date | Signature of initiating party or representative |

*See other side for family-related case filings*

Nevada AOC - Research Statistics Unit
Pursuant to NRS 3.275

Form PA 201
Rev 3-1

Case Number: A-25-912369-C

Electronically Filed
2/10/2025 5:23 PM
Steven D. Grierson
CLERK OF THE COURT

**IAFD**
Rachel Mariner, NV Bar No. 16728
Jason Kuller, Nevada Bar No. 12244
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056
Facsimile: 725.220.1802
Email: rachel@rafiilaw.com
Email: jason@rafiilaw.com
*Attorneys for Plaintiffs*

CASE NO: A-25-912369-C
Department 31

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| JANE DOE, | Case No.: |
| Plaintiff, | Dept. No.: |
| v. | |
| BERRY GLOBAL, INC. and BERRY PLASTICS OPCO, INC. and DOES 1 through 50, inclusive, | **PLAINTIFF'S INITIAL APPEARANCE FEE DISCLOSURE** |
| Defendants. | |

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for party appearing in the above-entitled action as indicated below:

    JANE DOE                             $270.00

/ /
/ /
/ /
/ /

    **TOTAL REMITTED**                 $270.00

1

**PLAINTIFF'S INITIAL APPEARANCE FEE DISCLOSURE**

Case Number: A-25-912369-C

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



1  DATED: February 10, 2025

2                                        **RAFII & ASSOCIATES, P.C.**

3

4                      By:    */s/ Rachel Mariner*
                              RACHEL MARINER
5                              *Attorneys for Plaintiff*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PLAINTIFF'S INITIAL APPEARANCE FEE DISCLOSURE**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS